UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT FORBES,

              Plaintiff,

v.

JOHN DOE, SGT. ANTHONY
BONGIOVANNI, CITY OF ROCHESTER,
OFFICER MICHAEL DIMAURO,
OFFICER CHRISTINA MOORHOUSE,
OFFICER CHRISTOPHER M. SHADDER,
and COUNTY OF MONROE,

              Defendants.
_____

**DECISION AND ORDER**

6:18-cv-06700 EAW

## INTRODUCTION

Proceeding *pro se*, plaintiff Robert Forbes ("Plaintiff") asserts violations of his civil rights by Defendants. (Dkt. 1). Presently before the Court is a motion to dismiss filed by defendants Christopher M. Shadder ("Shadder") and the County of Monroe (the "County") (collectively "Moving Defendants"). (Dkt. 16). For the reasons set forth below, the motion to dismiss is granted.

## FACTUAL BACKGROUND

The operative pleading in this case is the amended complaint. (Dkt. 8). On April 6, 2020, the Court issued a Decision and Order screening the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (Dkt. 9) (the "Screening Order"). Plaintiff's factual allegations are set forth in detail in the Screening Order, familiarity with which is assumed for purposes of the instant Decision and Order. The Court summarizes the salient

facts below. As is required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

On June 10, 2017, the vehicle in which Plaintiff was a passenger was unlawfully stopped by Rochester Police Department ("RPD") officers Anthony Bongiovanni ("Bongiovanni") and Michael DiMauro ("DiMauro"). (*Id*. at 2). Bongiovanni and DiMauro accused Plaintiff of being involved in a drug transaction with the driver of the vehicle. (*Id*). Bongiovanni and DiMauro searched Plaintiff several times, and during these searches, Bongiovanni planted drugs on Plaintiff. (*Id*. at 3-4). Plaintiff was then arrested and taken to the Monroe County Jail for booking. (*Id*. at 4).

During booking at the Monroe County Jail, Shadder, who is employed by the Monroe County Sheriff's Department, searched Plaintiff. (Dkt. 8 at ¶¶ 13, 73). Shadder escorted Plaintiff to the "booking scan room" where he patted Plaintiff down and searched his pockets and clothing. (*Id*. at ¶ 74). Shadder then asked Plaintiff to remove his shoes. (*Id*. at ¶ 75). As Plaintiff removed his right shoe, a vial of marijuana that Bongiovanni had planted on him fell out and hit the floor. (*Id*. at ¶¶ 75-78).

Based on these events, Plaintiff was charged with obstructing governmental administration, unlawful possession of marijuana, and promoting prison contraband. (*Id*. at ¶ 84). These criminal charges were dismissed on October 23, 2017. (*Id*. at ¶ 104).

In the Screening Order, the Court permitted Plaintiff to proceed to service on claims of excessive force, false imprisonment, unreasonable search and seizure pursuant to 42 U.S.C. § 1983 and on state law claims of false arrest, false imprisonment, assault, battery,

negligent hiring, intentional infliction of emotional distress ("IIED"), and malicious prosecution. (Dkt. 9 at 18-19).[1]

## PROCEDURAL BACKGROUND

Moving Defendants filed their motion to dismiss on June 18, 2020. (Dkt. 16). The Court entered a scheduling order requiring that any response by Plaintiff be filed no later than July 23, 2020. (Dkt. 17).

Plaintiff did not file a response to the motion to dismiss. Instead, on July 21, 2020, he filed a request for Clerk's entry of default as to Moving Defendants. (Dkt. 23). Plaintiff's request for entry of default makes no reference to the pending motion to dismiss, but instead notes that Moving Defendants' answers to the amended complaint were due on June 16, 2020, and that no such answers were filed by that date. (*Id.*).

On July 28, 2020, Moving Defendants filed a response to Plaintiff's request for entry of default and their own request for late filing. (Dkt. 25). Moving Defendants acknowledge that their answer deadline was June 16, 2020, and that their motion to dismiss was not filed until two days later, on June 18, 2020. (*Id.* at 1-2). Moving Defendants' counsel explains that he suffered a serious injury on June 9, 2020, and was working a reduced schedule prior to the filing of the motion to dismiss, which resulted in a "simple mistake" as to the answer deadline. (*Id.*).

---

[1]    The Court allowing a claim to proceed to service following initial screening pursuant to § 1915(e) and/or § 1915A does not preclude a later dismissal of that complaint under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Sawyer v. New York State Dep't of Corr. Servs.*, No. 11-CV-152S F, 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 28, 2015); *Cusamano v. Sobek*, 604 F.Supp.2d 416, 435 n. 29 (N.D.N.Y. 2009).

## DISCUSSION

I.      **Plaintiff's Request for Entry of Default**

As a threshold matter, the Court considers Plaintiff's request for entry of default as to Moving Defendants, and their opposing request for a *nunc pro tunc* extension of the answer deadline. The Court finds that the record in this case warrants excusing Moving Defendants' default.

Federal Rule of Civil Procedure 55(c) allows the Court to set aside a default "for good cause." As another court in this District has explained:

> Because Rule 55(c) does not define the term "good cause," the Second Circuit has established three criteria that district courts must assess in deciding whether to relieve a party from a default: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.

*Fetcho v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-232C, 2014 WL 2939165, at *2 (W.D.N.Y. June 27, 2014) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). "These criteria must be applied in light of the Second Circuit's 'strong preference for resolving disputes on the merits.'" *Id*. at *2 (quoting *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995)). "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96.

Here, the relevant factors counsel against entry of default. Moving Defendants' default was not willful, which in this context means "conduct that is 'more than merely negligent or careless.'" *Fetcho*, 2014 WL 2939165, at *2 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Further, the two-day delay in the filing of Moving


Defendants' motion to dismiss did not cause any prejudice to Plaintiff.  Finally, Moving Defendants have a meritorious defense—as discussed fully below, they are entitled to dismissal of the claims against them.  Accordingly, the Court excuses Moving Defendants' default and *nunc pro tunc* grants their request for a two-day extension of the deadline for responding to the Complaint.[2]

## II. Moving Defendants' Motion to Dismiss

### A. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2]  Pursuant to Federal Rule of Civil Procedure 12(a)(4), the filing of Moving Defendants' motion to dismiss tolled their time to answer pending the Court's determination thereof.

*Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Plaintiff has not Stated a Claim Against Moving Defendants

Moving Defendants argue that Plaintiff has not alleged facts from which a reasonable jury could conclude that they had violated his rights. The Court agrees, for the reasons that follow.

#### 1. Claims Against Shadder

With respect to Plaintiff's federal claims against Shadder, to state a claim under § 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Here, the sole factual allegations against Shadder are that he searched Plaintiff when he was booked at the Monroe County Jail and discovered the drugs that Bongiovanni had previously planted on Plaintiff. Shadder is not alleged to have been involved in the

unlawful stop of the vehicle, the subsequent searches during which the drugs were placed on Plaintiff, or Plaintiff's arrest. Shadder also is not alleged to have used any excessive force against Plaintiff during the booking search. It is simply not the law that "a police officer without knowledge of an arrestee's putatively unlawful treatment participates in a constitutional violation by processing and booking the arrestee." *Strachn v. City of New York*, No. 19-CV-10212 (JPO), 2020 WL 6291428, at *2 (S.D.N.Y. Oct. 27, 2020) (dismissing constitutional claims against booking officer who was not alleged to have participated in or have had knowledge of the circumstances of unlawful arrest).

Plaintiff does make a conclusory allegation that Shadder "conspired with" Bongiovanni and DiMauro to violate his constitutional rights. (Dkt. 1 at ¶ 86). However, "where the personal involvement of a defendant in a Section 1983 violation is premised upon a claim of conspiracy, it is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights." *Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (quotation and alteration omitted). Here, Plaintiff has pled no facts that would support his allegation of a conspiracy, and this is not a plausible basis for finding personal involvement by Shadder.

There is similarly no basis in Plaintiff's allegations to plausibly conclude Shadder is liable on any of Plaintiff's state law claims for false arrest and imprisonment, assault, battery, negligent hiring, intentional infliction of emotional distress, or malicious prosecution. With respect to the claim for false arrest and imprisonment, as previously noted, Shadder is not alleged to have had any involvement in Plaintiff's arrest—he merely

processed and booked Plaintiff after Bongiovanni and DiMauro had already arrested him and brought him to the Monroe County Jail.

As to the assault and battery claims, "[e]xcept for § 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same." *Cabral v. City of New York*, No. 12 Civ. 4659 (LGS), 2014 WL 4636433, at *10 (S.D.N.Y. Sept. 17, 2014) (quotation marks and citation omitted), *aff'd*, 662 F. App'x 11 (2d Cir. 2016). Shadder is entitled to dismissal of these claims for the same reasons he is entitled to dismissal of the § 1983 excessive force claim—namely, he is not alleged to have used any force on Plaintiff.

As to the malicious prosecution claim, it is a necessary element of such a cause of action that "the defendant initiated a prosecution against plaintiff. . . ." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Shadder is not alleged to have been involved in the initiation or continuation of the criminal prosecution against Plaintiff; to the contrary, Plaintiff expressly alleges that it was Bongiovanni who completed the felony complaint/misdemeanor information. (Dkt. 1 at ¶ 87).

Plaintiff also has not plausibly alleged an IIED claim against Shadder. "The New York state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) (quotation omitted), *aff'd*, 513 F. App'x 95 (2d Cir. 2013). Shadder's alleged conduct (namely,

searching Plaintiff incident to his booking into the Monroe County Jail) does not even come close to the "high threshold for conduct that is extreme and outrageous enough to constitute intentional infliction of emotional distress." *Id.* (quotation omitted).

Further, Shadder is not alleged to have been the employer of any of the other defendants in this action and thus cannot be held liable for negligent hiring. *See Lawton v. Town of Orchard Park*, No. 14-CV-867S, 2017 WL 3582473, at *13 (W.D.N.Y. Aug. 18, 2017) ("To state a claim for negligent hiring, training, and supervision, a plaintiff must allege, in addition to the elements of standard negligence, that '(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

In sum, the factual allegations in Plaintiff's amended complaint, accepted as true, would not support a jury finding against Shadder on any of Plaintiff's claims. Accordingly, Shadder is entitled to dismissal of the claims against him.

### 2. Claims Against the County

Plaintiff has also not plausibly alleged any claims against Monroe County. As an initial matter, the Complaint does not allege any actions by the County at all. Plaintiff has included in the amended complaint a conclusory allegation that the County "has shown a deliberate indifference to Plaintiff's health, civil and constitutional rights granted by the United States Constitution and the laws of the State of New York and its Constitution."

(Dkt. 1 at ¶ 88). However, Plaintiff has failed to provide any supporting factual allegations with respect to this allegation, and "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quotations omitted).

Moreover, the Court's conclusion that Plaintiff has not stated a § 1983 claim as to Shadder—the only individual defendant who is an employee of the County—compels the conclusion that Plaintiff has not stated a § 1983 claim against the County. *See Carter v. Broome Cty.*, 394 F. Supp. 3d 228, 239 (N.D.N.Y. 2019) (explaining that "in the context of § 1983 municipal liability, the presence of an underlying constitutional violation remains a 'required predicate'"). Similarly, to the extent Plaintiff is attempting to pursue his state law claims on a *respondeat superior* theory, that theory cannot survive the dismissal of the claims against Shadder. *See Stevens v. City of New York*, No. 10 CIV. 2172 KBF JLC, 2012 WL 5862659, at *4 n.6 (S.D.N.Y. Nov. 14, 2012) ("Where 'there [is] no surviving underlying theory of liability,' the respondeat superior claims must be dismissed." (alteration in original and quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996)). There is no viable claim against the County set forth in the amended complaint, and the County is entitled to dismissal.[3]

---

[3] The Court has also considered whether Plaintiff should be afforded an opportunity to amend his claims against Moving Defendants, in light of his *pro se* status. *See Styles v. Goord*, 198 F. App'x 36, 37 (2d Cir. 2006) ("[A] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint[.]" (citation omitted)). However, "an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend." *Diaz v. Henley*, No. 9:19-CV-1611GLSDJS, 2020 WL 1849454, at *2 (N.D.N.Y. Apr. 13, 2020). Here, not only has the Court previously afforded Plaintiff the opportunity to file an amended complaint, he also

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's request for entry of default as to the Moving Defendants (Dkt. 23) and grants Moving Defendants' motion to dismiss. (Dkt. 16). The Clerk of Court is instructed to terminate Christopher M. Shadder and the County of Monroe as defendants in this matter.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 3, 2021
       Rochester, New York

---

failed to file a response to the motion to dismiss. Further, there is no reason on the record before the Court to conclude that Plaintiff could state a viable claim against Moving Defendants if he was permitted to file a second amended complaint. Accordingly, leave to amend is not warranted.