UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT FORBES,

                Plaintiff,

      v.

JOHN DOE, SGT. ANTHONY
BONGIOVANNI, CITY OF ROCHESTER,
OFFICER MICHAEL DIMAURO, and
OFFICER CHRISTINA MOORHOUSE,

                Defendants.

**DECISION AND ORDER**

6:18-cv-06700 EAW

---

## INTRODUCTION

*Pro se* plaintiff Robert Forbes ("Plaintiff") is a former Monroe County Jail inmate who asserts violations of his civil rights under both 42 U.S.C. § 1983 and New York State law. (Dkt. 8). Presently before the Court is a motion to dismiss filed by Defendants. (Dkt. 40).[1] For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## FACTUAL BACKGROUND

The operative pleading in this case is the amended complaint. (Dkt. 8). On April 6, 2020, the Court issued a Decision and Order screening the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (Dkt. 9) (the "Screening Order"). Plaintiff's

---

[1] Plaintiff has filed a motion for sanctions, which is pending before United States Magistrate Judge Marian W. Payson, to whom all pretrial matters other than dispositive motions have been referred. (*See* Dkt. 21; Dkt. 40; Dkt. 48). The instant Decision and Order does not address that motion.

factual allegations are set forth in detail in the Screening Order, familiarity with which is

assumed for purposes of the instant Decision and Order.  The Court summarizes the salient

facts below.  As is required at this stage of the proceedings, the Court treats Plaintiff's

allegations as true.

On June 10, 2017, in Rochester, New York, Plaintiff was picked up in a vehicle

driven by Latoya Black ("Black"), the mother of Plaintiff's two-year-old child who was

sitting in the back seat.  (Dkt. 8 at ¶¶ 21, 24).  Plaintiff had just exited Salvatore's Pizza on

Electric Avenue, crossed the street, and climbed into Black's jeep, which was pulled over

in front of a convenience store located across the street from Salvatore's.  (*Id.* at ¶ 23).

As Black drove in the direction of Plaintiff's home, she noticed a Rochester Police

Department ("RPD") patrol car following her.  (*Id.* at ¶ 26).  Black traveled about three

blocks before she was stopped by two RPD officers, Defendants Bongiovanni

("Bongiovanni") and DiMauro ("DiMauro").  (*Id.* at ¶ 27).

Plaintiff alleges that Black had not violated the law or committed any traffic

infractions or equipment violations.  (*Id.* at ¶¶ 28-29).  When Bongiovanni and DiMauro

approached the vehicle, Bongiovanni accused Plaintiff of engaging in a drug transaction

with Black, whom they did not believe to be previously acquainted with Plaintiff.  (*Id.* at

¶ 34).  After repeatedly hesitating to explain why he had stopped the jeep, Bongiovanni

finally gave "tinted windows" as the reason for pulling the vehicle over.  (*Id.* at ¶ 36).

However, Black was never charged with an equipment violation, or any other traffic

infraction.  (*Id.* at ¶¶ 39-40).  Bongiovanni stated that he and his partner wanted to check

Black and Plaintiff for warrants "and if everything was clear, [they] could go." (*Id.* at ¶ 43).

When Bongiovanni and DiMauro were informed by the police dispatcher that Plaintiff was on felony parole for a weapons charge, they started "whistling and hooting and . . . gave [each other] a high-five." (*Id.*). Bongiovanni and DiMauro then conspired to "invent a pretense authorizing [a] search of the vehicle and said if they couldn't convince Ms. Black to consent to a search, they needed to create a way to ruffle Ms. Black's and Plaintiff's feathers so they could justify a search of the vehicle." (*Id.* at ¶ 46).

Black and Plaintiff refused to consent. (*Id.* at ¶ 48). "Bongiovanni then insisted Plaintiff remove himself from the vehicle," reached into the car, and unlocked Plaintiff's door. (*Id.* at ¶¶ 48-54). When Plaintiff relocked the door, Bongiovanni "unsnapped the holster to his service weapon," and both Plaintiff and his daughter began crying. (*Id.* at ¶¶ 55-56). Bongiovanni unlocked the door again and stated that he "was not going to tell Plaintiff one more time to get out of the vehicle." (*Id.* at ¶ 57). Plaintiff exited the vehicle, and DiMauro held Plaintiff's hands behind his back as "Bongiovanni searched Plaintiff from head to toe." (*Id.* at ¶ 59). DiMauro "began lifting Plaintiff's arms behind his back[,] placing Plaintiff in a very uncomfortable position[,] causing him to bend his torso forward to relieve pressure on his shoulders." (*Id.* at ¶ 61). Bongiovanni "who now was searching Plaintiff for the third of fourth time began shoving Plaintiff's chest back causing [him] to suffer more shoulder pain." (*Id.*). "Bongiovanni then began reaching . . . into Plaintiff's

underwear attempting to search around Plaintiff's genitalia," while DiMauro pulled "Plaintiff's arms uncomfortably higher behind his back." (*Id.* at ¶ 63).

Plaintiff then broke away from the officers and ran down Albermarle Street. (*Id.* at ¶ 64). Bongiovanni and DiMauro chased Plaintiff, tackled him to the ground, and arrested him. (*Id.* at ¶ 65). After Plaintiff was handcuffed and arrested, Defendant Officer Christina Moorhouse ("Moorhouse") "arrived at the scene and allegedly found four glassine vials containing marijuana behind the fences at 259 Albermarle Street." (*Id.* at ¶ 67). "Plaintiff was then taken to [the] Aquinas Institute" where Bongiovanni searched Plaintiff again several times. (*Id.* at ¶ 69). Bongiovanni then "began reaching up Plaintiff's right pant leg. Plaintiff asked what [he] was doing and Bongiovanni responded with a sneer and laughter." (*Id.* at ¶ 70).

Plaintiff was taken to the Monroe County Jail for booking. (*Id.* at ¶ 71). Former defendant Officer Christopher M. Shadder ("Shadder")[2] directed Plaintiff to remove his shoes. (*Id.* at ¶ 75). "[A]s Plaintiff removed his right shoe, a plastic clear vial with a white lid fell out of [his] right pant leg and hit the floor." (*Id.* at ¶ 75). Plaintiff believed that Bongiovanni had planted the vial of marijuana when he had searched Plaintiff previously at the Aquinas Institute earlier that day. (*Id.* at ¶ 78).

Plaintiff was charged with obstructing governmental administration in the second degree, unlawful possession of marijuana, promoting prison contraband in the second degree, and a parole violation that carried a possible 36-month prison sentence. (*Id*. at

---

[2]    The Court dismissed Plaintiff's claims against Shadder and Monroe County in a Decision and Order entered on March 3, 2021. (Dkt. 30).

¶ 84).  Plaintiff alleges that Bongiovanni and DiMauro "conspired" with Moorhouse, and "John Does" to pursue "false charges" and "maliciously prosecute" him, and that Bongiovanni lied in a criminal complaint sworn to on June 10, 2017.  (*Id*. at ¶¶ 86, 87)*.* The criminal charges against Plaintiff were dismissed by Judge Maija Dixon on October 23, 2017.  (*Id.* at ¶ 104).

As a result of Defendants' actions during his arrest, "Plaintiff became sick, sore, lame and disabled and suffered and is still suffering great physical and mental pain and discomfort." (*Id*. at ¶ 162).  Plaintiff also alleges that all of his injuries are of a permanent nature. (*Id.*).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on September 27, 2018.  (Dkt. 1).  On May 23, 2019, the Court entered a Decision and Order finding that Plaintiff had failed to allege a viable claim against any of the defendants, but affording him an opportunity to amend. (Dkt. 7).

Plaintiff filed the amended complaint—the operative pleading in this matter—on July 15, 2019.  (Dkt. 8).  On April 6, 2020, the Court entered the Screening Order, which dismissed Plaintiff's claims against the Rochester Police Department and the Monroe County Sheriff, as well as his claims for negligence, prima facie tort, punitive damages, and his claims brought under the New York State Constitution.  (*Id.* at 1).  Plaintiff was allowed to proceed to service on claims of excessive force, false arrest and imprisonment, and unreasonable search and seizure pursuant to § 1983, and on state law claims for false

arrest, false imprisonment, assault, battery, negligent hiring, intentional infliction of emotional distress, and malicious prosecution. (*Id*. at 18-19)[3].

Defendants answered the complaint on June 23, 2020. (Dkt. 20). Nearly a year later, on June 16, 2021, they filed the instant motion to dismiss, purportedly pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 40). Plaintiff filed his response on July 20, 2021. (Dkt. 47). Defendants did not file a reply.

## DISCUSSION

## I.    Legal Standard

As an initial matter, the Court notes that Defendants filed the instant motion after they filed an answer to the amended complaint. However, a motion to dismiss pursuant to Rule 12(b)(6) must be filed before an answer is interposed. *See Leather v. Eyck*, 180 F.3d 420, 423 n.4 (2d Cir. 1999). "A Rule 12(b)(6) motion filed after a defendant answers the complaint should be treated as a motion for judgment on the pleadings, under [Federal Rule of Civil Procedure] 12(c)." *Wojtczak v. Safeco Prop. & Cas. Ins. Companies*, 669 F. Supp. 2d 305, 311 (W.D.N.Y. 2009). Accordingly, the Court will analyze Defendants' motion as a motion for judgment on the pleadings pursuant to Rule 12(c).

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering

---

[3]    The Court allowing a claim to proceed to service following initial screening pursuant to § 1915(e) and/or § 1915A does not preclude a later dismissal of that claim under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Sawyer v. New York State Dep't of Corr. Servs*., No. 11-CV-152S F, 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 28, 2015); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 435 n. 29 (N.D.N.Y. 2009).

the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal

quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at

555).

## II.    **Viability of Plaintiff's Claims**

Defendants make the following arguments in support of their motion to dismiss

Plaintiff's remaining claims:  (1) the RPD is not a proper party to this action; (2) Plaintiff

was not falsely arrested but was instead merely permissibly detained under *Terry v. Ohio*,

392 U.S. 1 (1968); (3) Defendants are entitled to qualified immunity as to Plaintiff's false

arrest claims; (4) Plaintiff has failed to plausibly allege municipal liability pursuant to

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978), or to plausibly

allege negligent hiring by the City of Rochester; (5) Plaintiff has not plausibly alleged

excessive force or assault and battery; (6) Plaintiff's claims asserted under the New York

State constitution should be dismissed because he has an adequate alternative remedy; and

(7) Plaintiff's negligence claim cannot coexist with his claims of intentional tort.  (Dkt. 40-

1).[4]

As an initial matter, the Court notes that Defendants make several arguments

regarding claims that the Court has already dismissed.  In particular, the Court has already

---

[4]      Although it appears that Defendants are seeking dismissal of the amended complaint
in its entirety, they have failed to address the viability of Plaintiff's claims for unreasonable
search and seizure, intentional infliction of emotional distress, and malicious prosecution.
Accordingly, there is no basis on the instant record for the Court to dismiss those claims.

dismissed Plaintiff's claims against the RPD, Plaintiff's claims under the New York State constitution, and Plaintiff's negligence claim.  (*See* Dkt. 9 at 1).  This is not the first time counsel for the City of Rochester has filed a motion before the undersigned seeking dismissal of claims that the Court has already dismissed.  *See, e.g., Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 490 n.1 (W.D.N.Y. 2019) ("Defendants argue in the motion to dismiss that Plaintiff's claim against the City of Rochester should be dismissed.  Because the Court has already dismissed the claim against the City of Rochester, that portion of Defendants' motion is denied as moot. Defendants also argue that Plaintiff cannot maintain a claim for false arrest. However, the Court did not allow a false arrest claim to proceed in the Screening Order." (citations omitted)).

It is not an efficient use of the parties' or the Court's time to litigate the viability of claims that the Court has already determined cannot proceed.  Counsel is strongly encouraged in the future to review the Court's prior decisions in a matter before drafting and filing a motion to dismiss.  Defendants' motion is denied as moot insofar as it seeks dismissal of claims that are no longer a part of this action.  The Court considers Defendants' remaining arguments below.

A.      **False Arrest**

Defendants seek dismissal of Plaintiff's claims of false arrest, asserting that he was validly detained under *Terry* and was not formally arrested until after he ran from the police.  (Dkt. 40-1 at 3).  This argument misses the mark.  It is true that "a routine traffic stop is more analogous to a so-called '*Terry* stop' than to a formal arrest."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quotation and alteration omitted).   However,

"[c]onfinement that is not part of a formal arrest may give rise to a [false arrest] claim under § 1983." *Williams v. Cty. of Nassau*, No. 10-CV-4815 WFK ARL, 2014 WL 4101545, at *6 (E.D.N.Y. Aug. 18, 2014); *see also United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (an investigatory stop may "ripen into a *de facto* arrest" when it is more intrusive than necessary to effectuate its purposes).

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354. (citations omitted). "[T]o justify this type of seizure, officers need 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). However, Plaintiff has alleged in this case that there was no traffic violation and "no lawful basis for stopping [the] vehicle whatsoever." (*See* Dkt. 8 at ¶¶ 28-30, 41). Plaintiff further alleges that Bongiovanni was "at a complete loss" when asked why he had pulled over the vehicle and that his belated assertion that the vehicle had unlawfully tinted windows was fabricated. (*Id.* at ¶¶ 36-37). Accepting Plaintiff's allegations as true, a reasonable jury could find that the officers lacked the requisite reasonable suspicion to detain Plaintiff in the first instance and that he was accordingly subject to *de facto* arrest prior to his flight.

Defendants assert that "Plaintiff admits that Sgt. Bongiovanni stated that he believed Plaintiff was involved in a drug transaction after having observed him standing at a 7 Eleven convenient store." (Dkt. 40-1 at 4). Defendants further argue that the area in which Plaintiff was stopped is a high crime area and provide information regarding the number

of drug arrests that occurred at the 7-Eleven store in question, contending that this factual context supports the conclusion that there was reasonable suspicion for the vehicle stop. (*Id*. at 5). However, this argument relies on facts outside the pleadings, and thus cannot be considered by the Court at this stage of the proceedings. The factual allegations in the amended complaint simply do not support the conclusion that Bongiovanni and DiMauro had an objectively reasonable suspicion of criminal activity on Plaintiff's part.

Defendants' contention that Plaintiff, as a parolee, had a diminished expectation of privacy is also misplaced. Accepting Plaintiff's allegations as true, Defendants had no knowledge that he was a parolee at the time of the initial vehicle stop, and thus cannot have relied on that status in detaining Plaintiff and Black. *See Loharsingh v. City & Cty. of San Francisco*, 696 F. Supp. 2d 1080, 1102-03 (N.D. Cal. 2010) ("Police officers cannot justify a suspicionless search and arrest on the basis of an after-the-fact discovery of an arrest warrant or a parole condition. Thus, to the extent a jury could reasonably conclude that Plaintiff was arrested before the officers learned that Plaintiff was a parolee, Defendants are not entitled to summary judgment on Plaintiff's false arrest claim on the basis of the fact that Plaintiff was on parole.").

Finally, the Court rejects Defendants' argument that they are entitled to qualified immunity at this stage of the proceedings. "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). The Court "must look to both the clarity of the law establishing the right allegedly

violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596-97 (2d Cir. 2003) (quotation omitted).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (quotation omitted).  "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted).

Here, accepting Plaintiff's factual recitation as true, a reasonable jury could find a violation of Plaintiff's clearly established right to be from a vehicle stop unsupported by reasonable suspicion.  *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (collecting cases and denying request to dismiss under Rule 12(c) on basis of qualified immunity where police officers allegedly lacked reasonable suspicion for vehicle search but were instead acting on mere speculation of criminal activity). Accordingly, the Court will not dismiss Plaintiff's false arrest claims on the basis of qualified immunity at this time.

### B.   <u>Municipal Liability and Negligent Hiring</u>

Defendants' next argument is that Plaintiff has failed to viably allege municipal liability under § 1983 on the part of the City of Rochester as to Plaintiff and has further failed to viably allege a claim for negligent hiring.  The Court agrees, for the reasons that follow.

Municipalities cannot be held vicariously liable under § 1983 for the constitutional torts of their employees, nor can they be subject to liability under § 1983 pursuant to a theory of *respondeat superior*.  *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Canton v. Harris*, 489 U.S. 378, 385 (1989)[5].  Where a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

Here, Plaintiff provides a conclusory list of "customs, practices, procedures and rules" that he claims the City of Rochester adopted.  (Dkt. 8 at ¶ 130).  He further states that the existence of such claimed policies "may be inferred from repeated occurrences of similar wrongful conduct as documented in the following civil rights actions filed against the CITY."  (*Id*. at ¶ 131).  However, he fails to provide any such list of civil rights actions.

"To establish municipal liability under § 1983, a plaintiff must do more than simply state that a municipal policy or custom exists.  Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted).  "[V]ague, conclusory allegations that [a municipality] permitted, tolerated, and covered up police abuses, while failing to discipline and supervise offending police

---

[5]    The same is not true for Plaintiff's New York common law claims.  "[U]nlike cases brought under § 1983, municipalities may be liable for the common law torts, like . . . malicious prosecution, committed by their employees under the doctrine of *respondeat superior*."  *Buari v. City of New York*, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021) (quotation omitted).

officers" are insufficient to state a viable claim pursuant to *Monell*. *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (collecting cases). Plaintiff's conclusory allegations of a municipal policy are not sufficient to allow his § 1983 claims against the City of Rochester to survive a motion to dismiss.

The same is true of Plaintiff's claim for negligent hiring by the City of Rochester. "A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training*." Cort v. Marshall's Dep't Store*, No. 14CV7385 NGG RER, 2015 WL 9582426, at *5 (E.D.N.Y. Dec. 29, 2015) (collecting cases). Accordingly, the Court grants Defendants' motion to dismiss with respect to that claim.

The Court has considered whether Plaintiff should be afforded an opportunity to amend these claims, in light of his *pro se* status. *See Styles v. Goord*, 198 F. App'x 36, 37 (2d Cir. 2006) ("[A] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint[.]" (citation omitted)). However, "an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend." *Diaz v. Henley*, No. 9:19-CV-1611GLSDJS, 2020 WL 1849454, at *2 (N.D.N.Y. Apr. 13, 2020). Here, Plaintiff was already afforded the opportunity to amend and was specifically advised of the necessity of pleading a municipal policy. (Dkt. 7 at 8). Under these circumstances, the Court does not find it appropriate to grant Plaintiff a further opportunity to amend at this time.

## C.    Excessive Force and Assault and Battery

Defendants next seek dismissal of Plaintiff's excessive force and assault and battery claims, arguing that the force alleged is insufficient to support such claims. The Court

rejects this argument.  As set forth in the Screening Order, "the Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects.  To establish a Fourth Amendment excessive force claim, the Plaintiff must show that the force used by the officer was 'objectively unreasonable.'" *Correa v. McLeod*, No. 3:17CV1059(VLB), 2017 WL 2962884, at \*3 (D. Conn. July 11, 2017).  Determining whether the force is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake.  *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

"'[N]ot every push or shove' amounts to a Fourth Amendment violation.  Indeed, a 'de minimis use of force will rarely suffice to state a Constitutional claim.'" *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at \*10 (S.D.N.Y. Apr. 26, 2012) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)).  Moreover, a plaintiff must allege that he sustained an injury.  *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at \*4 (S.D.N.Y. July 20, 2011).  "However, an individual does not need to sustain a severe injury to maintain a claim."  *Id.* (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).  Plaintiff's allegations that DiMauro and Bongiovanni twisted and pulled his arms, shoved him, and reached into his underwear during the course of an unlawful seizure are sufficient to plausibly support his excessive force claim.

For similar reasons, the Court cannot dismiss Plaintiff's claim under New York State for assault and battery.  *See Ivery v. Baldauf*, 284 F. Supp. 3d 426, 437 (W.D.N.Y. 2018) ("Under New York law, . . . the use of any force during the course of an unlawful arrest gives rise to assault and battery claims against the arresting officer.").  Defendants' motion is accordingly denied as to the excessive force and assault and battery claims.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss (Dkt. 40) is granted with respect to Plaintiff's § 1983 claims against the City of Rochester, as well as his negligent hiring claim.  Defendants' motion is denied in all other aspects.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       January 18, 2022
             Rochester, New York